UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                    )
MICHELLE JENKINS AND                )
MATTIE GADSON,                      )
     Plaintiffs,                     )
                                    )          Civil Action No. 05-11139-NG
                                    )
VETERANS' LIFE INSURANCE            )
COMPANY, INC.                       )
     Defendant.                      )
_____)

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE A
SECOND AMENDED COMPLAINT TO ADD JOVIE JENKINS AND RUFUS
JENKINS, JR. AS PARTY PLAINTIFFS**

**I.**　　　　　　　　　　**INTRODUCTION**

     Pursuant to Rule 7.1 of the United States District Court for the District of
Massachusetts, the defendant Veterans Life Insurance Company, Inc. ("Veterans")
opposes, on the grounds of futility, the plaintiffs' Motion for Leave to File Second
Amended Complaint, to the extent it seeks to bring claims for violation of M.G.L. c. 93A
and 42 U.S.C.A § 1981 on behalf of Jovie Jenkins and Rufus Jenkins, Jr. Veterans further
opposes plaintiffs' Motion in its entirety on the grounds of  (1) unjustifiable delay, and
(2) prejudice. In support of its Opposition, Veterans submits the following memorandum.

**II.**　　　　**STATEMENT OF CASE AND RELEVANT PROCEDURAL HISTORY**

     In this action the plaintiffs, Michelle Jenkins and Mattie Gadson (collectively
referred to as "Plaintiffs), have brought suit against Veterans, alleging breach of contract,
violation of G.L. c. 93A and c. 176D and violation of 42 U.S.C.A § 1981.

This action arises from Veterans' alleged failure to timely pay accidental death benefits to the Plaintiffs under Group Accidental Death Insurance Certificate Number QH02529 and Group Accidental Death Insurance Certificate Number QI39513 (collectively referred to as "Certificates") that Veterans issued to Rufus E. Jenkins. Specifically, it is alleged, inter alia, that on December 25, 2004, Rufus E. Jenkins was the victim of a homicide and that on January 3, 2005, Plaintiffs submitted a claim for the death benefits under the Certificates on the basis that Rufus E. Jenkins' homicide triggered Veterans' obligation to pay the accidental death benefits to the Plaintiffs. It is further alleged that on March 21, 2005, approximately 2 months after submitting their claim, Plaintiffs, through their attorney, served a letter claiming that Veterans' failure to pay the death benefits as of that date constituted bad faith and demanding payment of the death benefits, pursuant to M.G.L. c. 93A and c.176D.

On May 12, 2005, approximately four months after the submission of their claim to Veterans, the Plaintiffs filed a Complaint, having Civil Action Number 05-1880-H in the Suffolk Superior Court in Boston, Massachusetts that was captioned, *Michelle Jenkins and Mattie Gadson v. Veterans' Life Insurance Company, Inc.* ("Complaint").

On June 1, 2005, Veterans removed the action to Federal Court. On June 17, 2005, Plaintiffs amended their Complaint to add the claim that Veterans' refusal to pay the death benefits also violated 42 U.S.C.A § 1981.

As of December 2005, Veterans determined, as a result of its investigation, that it was obligated to pay the accidental death benefits to the Plaintiffs. Accordingly, on December 19, 2005, the accidental benefit of $30,000.00 payable to plaintiff Mattie Gadson, as sole beneficiary under Group Accidental Death Insurance Certificate Number

QI39513, were offered to plaintiff Mattie Gadson, through her attorney Burton Nadler. Attorney Nadler rejected this offer, and Veterans in a letter dated December 19, 2005 confirmed this rejection and expressed its continued willingness to pay the accidental death benefit. (See a true and accurate copy of said letter annexed hereto as Exhibit "A.").

With respect to the payment of the accidental death benefit of $150,000.00 claimed by plaintiff Michelle Jenkins under Group Accidental Death Insurance Certificate Number QH02529, Veterans determined that Jovie Jenkins and Rufus Jenkins, Jr. were also beneficiaries under Group Accidental Death Insurance Certificate Number QH02529, and consequently, contrary to the plaintiff Michelle Jenkins' persistent and specific claim both before and after the filing of her lawsuit, she was not entitled to the full amount of the $150,000.00 accidental death benefit. [1]

Given these potentially adverse claims for the accidental death benefits payable under Group Accidental Death Insurance Certificate Number QH02529, Veterans, on December 16, 2005, filed an action for rule interpleader under Fed.R.Civ.P. 22, and for statutory interpleader under the Federal Interpleader Act, 28 U.S.C. § 1335 against Michelle Jenkins, Jovie Jenkins and Rufus Jenkins, Jr. alleging, inter alia, that based upon its investigation it had determined that it was liable for the payment of the accidental death benefit of $150,000.00 under Group Accidental Death Insurance Certificate Number QH02529 and that it wished to deposit the accidental benefit with the Court for final disposition between the parties. A true and accurate copy of Veterans' Interpleader Complaint is annexed hereto as Exhibit "B" without its exhibits annexed)

---

[1] Notably, up until the filing of plaintiffs' current motion to amend, plaintiffs' counsel never represented or otherwise indicated in any communication to Veterans or to this Court that he was the attorney for Jovie Jenkins or Rufus Jenkins, Jr. He now claims that through inadvertence he failed to tell anybody, including the Court.

On December 22, 2005, Veterans served Exhibit "B" with a Request for Waiver of Service of Summons upon counsel for plaintiff Michelle Jenkins, Burton Nadler. [2]

Plaintiffs and their counsel now seek to file a Second Amended Complaint to add Jovie Jenkins and Rufus Jenkins as party plaintiffs to this action, which Veterans opposes.

**III.      STANDARD FOR AMENDMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(a)**

Leave to amend under Federal Rule of Civil Procedure 15(a) "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "Unless there is a good reason for denial, 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.' " *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 907-908 (8th Cir.1999), quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir.1992). Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir.19980.

"There is no absolute right to amend." *Id.,* citing *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir.1994).). Where an amendment "would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters." *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990). As ground for denial of leave to amend, "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be

---

[2] Prior to service of the Interpleader Complaint upon Burton Nadler, Veterans had a Sheriff serve the action upon Jovie Jenkins and Rufus Jenkins, Jr. Jovie Jenkins thereafter left a telephone message for counsel for Veterans to contact her. She made no mention of having an Attorney as of that time.

granted. *Glassman v. Computervision Corporation*, 90 F.3d 617, 623 (1996). In determining whether it would be futile to allow leave to amend a complaint, the district court applies the same standard of legal sufficiency as it applies to a motion to dismiss for failure to state a claim. 3 *Moore's Federal Practice* ¶ 15.08[4], at 15-18 (2nd ed. 1993). "There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim." *Glassman*, 90 F.3d at 623. A proposed amended complaint must contain "factual allegations, either direct of inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) *see also Maurice v. State Farm Mutual Automobile Insurance Company*, 235 F.3d 7, 11 (1st Cir. 2000).

IV.                          <u>ARGUMENT</u>

**A.    PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED TO THE EXTENT CLAIMS ON BEHALF OF JOVIE JENKINS AND RUFUS JENKINS, JR. FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

**1.    An Amendment of the First Amended Complaint To State A Cause Of Action Under G.L. c. 93A On Behalf Of Jovie Jenkins And Rufus Jenkins, Jr. Would Be Futile, As It Fails To State A Claim Upon Which Relief Can Be Granted.**

G.L. c. 93A, § 9(3) states, in relevant part: At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. A pre-requisite to bringing a G.L. c. 93A claim is, thus, for the plaintiff to mail or deliver a demand letter to the intended defendant. The demand letter must specifically define "the injury suffered and the relief

demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied' and to enable him to make a 'reasonable tender of settlement.' " *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 274, 288 (1985) (citing *York v. Sullivan*, 369 Mass. 157, 162-63 (1975). It is well settled that a plaintiff must allege and prove that he has complied with the procedural requirements under the statute in order to pursue a claim under G.L .c. 93A. *Spring*, 394 Mass. at 287; *Rita v. Carella*, 394 Mass. 822, 824 n. 3 (1985) (noting that a demand letter sent to one defendant is not effective as against another defendant); *Entrialgo v. Twin City Dodge*, 368 Mass. 812, 813 (1975) (providing that the demand letter is a "procedural requirement the absence of which is a bar to suit"); *Cassano v. Gogos*, 20 Mass.App.Ct. 348, 350 (1985). (holding plaintiff's demand letter insufficient because it failed to give defendant either explicit or implicit notice of a consumer protection statute violation).

In the instant case, neither Jovie Jenkins nor Rufus Jenkins, Jr. have ever served a demand letter upon Veterans, pursuant to G.L. c. 93A**.** A true and accurate copy of Plaintiffs' 93A demand letter referenced in Plaintiffs' Amended Complaint and proposed Second Amended Complaint is annexed hereto and marked Exhibit "C."[3] As Exhibit "C" demonstrates, only Plaintiffs are named as **claimants** in the demand letter and there is no demand set forth on behalf either Jovie Jenkins or Rufus Jenkins, Jr. Moreover, the only parties Plaintiffs' counsel claims to represent in Exhibit "C" are the Plaintiffs. This is true of all the communication served upon Veterans by Plaintiffs' counsel, including the letter

---

[3] In considering the legal sufficiency of plaintiff's claim under a Rule 12(b)(6), it is well settled that the Court may consider documents "whose terms and effect are relied upon by the plaintiff in drafting the complaint. " *Gryl ex. Rel. Shire Pharms. Group PLC v. Shire Pharms. Groupl PLC*, 298 F.3d 136, 140 (2d Cir.2002); *see also MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002), cert. denied, 539 U.S. 902, 123 S.Ct. 2246, 156 L.Ed.2d110 (2003).

dated April 12, 2005, cited in paragraph 14 of Plaintiffs' proposed Second Amended Complaint and described therein as a reiteration of the demand for payment by Plaintiffs. A true and accurate copy of the letter dated April 12, 2005 is annexed hereto and marked Exhibit "D."

Given the foregoing, there is no basis, as a matter of law, for Jovie Jenkins or Rufus Jenkins, Jr. to pursue a cause of action against Veterans for violation of G.L. c. 93A. Any such action would be an exercise in futility, given the absence of the requisite 93A demand letter. *Entrialgo*, 368 Mass. at 813 (1975). Hence, the Court should deny the Plaintiffs' motion to amend in this regard.

**2.    An Amendment of the First Amended Complaint To State A Cause Of Action Under 42 U.S.C.A § 1981 On Behalf Of Jovie Jenkins And Rufus Jenkins, Jr. Would Be Futile, As It Fails To State A Claim Upon Which Relief Can Be Granted.**

42 U.S.C.A § 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

To state a claim under 42 U.S.C.A § 1981, plaintiff must show (1) that she is a member of a racial minority, (2) that the defendant discriminated against her on the basis of her race, and (3) that discrimination implicated one or more activities enumerated under 42 U.S.C.A § 1981. In the instant case, Veterans does not challenge that the allegations on behalf of Jovie Jenkins and Rufus Jenkins, Jr. are sufficiently pled to satisfy elements (1) and (3) of their claim under § 1981. As more fully discussed below, however, to the extent that there is no showing in the Second Amended Complaint that

Veterans purposely discriminated against Jovie Jenkins or Rufus Jenkins on the basis of their or anyone else's race, it fails to satisfy element (2) and thus to state a claim upon which relief can be granted under § 1981

To satisfy the second element of their claim under § 1981, the Seconded Amended Complaint must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racial discrimination." *Yufus v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994). A defendant's knowledge of a plaintiff's race is not without more sufficient support an inference of discriminatory intent. *See Robinson v. Adam*, 847 F.2d 1315, 1316 (9[th]cir.1987). Mere conclusory allegation that an insurance claim was denied on the basis of plaintiff's race does not satisfy the second element of this claim. *Harary v. Allstate Ins. Co*., 983 F.Supp. 95, 99-100 (E.D.N.Y. 1997).

In *Weiss v. LaSuisse,* 69 F.2d 449 (2nd Cir.1999), the plaintiffs alleged that that the defendant, La Suisse Life Insurance Company, among other thing, delayed paying proceeds under certain life insurance policies because the plaintiffs were Chassidic Jews and that this constituted discriminatory conduct in violation of § 1981. Upon a determination that the plaintiffs only alleged, inter alia, that the defendants "discriminated against plaintiffs based upon their ethnic and racial identity by refusing to pay benefits" the Court dismissed plaintiffs' claim on the basis that it failed to state a claim upon which relief can be granted. Specifically, the Court explained that the "plaintiffs' Complaint failed to identify any circumstances or events, apart from plaintiffs' bare allegation, that would, directly or indirectly, link the alleged breaches of

contract to plaintiffs' racial identity, and is 'too conclusory to survive a motion to dismiss'". *Id.* at 460, citing *Albert v. Carovano*, 851 F.2d 561, 572 (2nd Cir.1988).

These same flaws exist in the § 1981 allegations made on behalf of Jovie Jenkins and Rufus Jenkins. The allegations, viewed in a light most favorable to Jovie Jenkins and Rufus Jenkins, Jr., establish that as of April 12, 2005, approximately three months after submission of the claim to Veterans, Veterans was still engaged in its investigation of the claim, that Veterans refused to pay benefits, pending its investigation and that Veterans requested information during its investigation from the Boston Police Department and others and that this request included the submission of a questionnaire to the Boston Police Department. The Second Amended Complaint then alleges in conclusory fashion that Veterans attempted, through its questionnaire to the Boston Police Department, to link Rufus Jenkins, Jr. death to an unlawful act solely because he was African American and that Veterans has a policy of seeking investigations of minority insurance policy holders and that this is "based upon the policy holders race and not upon the insurance policy."

Not only are these allegations too conclusory to survive a motion to dismiss, they are belied by the very documents referenced and relied upon by Plaintiffs in making the allegations. A review of the Certificates referenced and relied upon in the Second Amended Complaint shows that the Certificates contain a specific exclusion which unambiguously states, in pertinent part, that the Certificate does not cover death caused by or resulting from …committing or attempting to commit any illegal activity. (True accurate copies of the Certificates are annexed hereto and marked Exhibit "E"). Further, the questionnaire to the Boston Police Department referenced and relied upon in the

Second Amended Complaint shows that Veterans directed questions to the police relevant to this exclusion and to the general circumstances of the homicide. (A true and accurate copy of the questionnaire is annexed hereto and marked Exhibit "F.").

No person could review these documents and reasonably infer that Veterans' investigation was motivated by race and not based on the insurance policy.[4] As the Certificates unequivocally establish Veterans had every right to investigate whether the police or anyone else had obtained facts that would assist Veterans in determining whether coverage existed for the claim. The mere fact that that Rufus Jenkins and the Plaintiffs are African American and Veterans' coverage determination, consistent with the exclusion in the Certificate, included a determination whether Rufus Jenkins was engaged in the commission of illegal activity at the time of his homicide does not raise an inference of racial motivation. If, as the exclusion provides, it was determined that Rufus Jenkins was killed while engaged in some illegal activity, Veterans could have denied coverage in this matter.

Given the absence of facts sufficient to raise a reasonable inference of racial motivation, the Court should deny the Plaintiffs' motion to file a § 1981 on behalf of Jovie Jenkins and Rufus Jenkins, Jr.

**B.    PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED IN ITS ENTIRETY AS IT IS PRODUCT OF UNJUSTIFIABLE DELAY AND VETERANS WILL BE PREJUDICED BY ITS ALLOWANCE.**

If Plaintiffs are to be believed, since Plaintiffs' counsel first communicated with Veterans through his 93A demand letter on March 21, 2005 up until a few days after Veterans filed it Interpleader Complaint with this Court against the Plaintiffs and Jovie

---

[4] It is worth noting that, pursuant to Fed.R.Civ.P. 11(b)(3), the Plaintiffs' counsel had an affirmative duty to submit pleadings to this Courts whose allegations are likely to have evidentiary support.

Jenkins and Rufus Jenkins Jr., he inadvertently failed to mention to Veterans or to this Court in any verbal communication or written pleading, letter or other document that he represented Jovie Jenkins and Rufus Jenkins, Jr. Though Veterans finds this to be a rather suspicious claim, the fundamental issue for Veterans is that it has occurred after specific deadlines have passed under the Joint Discovery Plan adopted by the Court and after Veterans coincidentally agreed to pay the accidental death benefits under the Certificates to Jovie Jenkins and Rufus Jenkins, Jr., as well as Plaintiffs. By this undue delay, Veterans will be prejudiced to the extent it has lost the opportunity to serve certain discovery on Jovie Jenkins[5] and Rufus Jenkins, Jr. and Veterans will at this late date be forced to unnecessarily litigate claims which are futile, as previously discussed, or, with respect to the breach of contract claim, involve, on its best day, an unlikely recovery of nominal interest, given Veterans' willingness to pay the full amount of the benefits payable under the Certificates to the Plaintiffs and Jovie Jenkins and Rufus Jenkins, Jr.

---

[5] In the Joint Discovery Plan it was agreed by Plaintiffs' counsel that all Rule 15 motions were complete. It was further agreed that the parties had up to and including December 30, 2005 to serve interrogatories and request for documents and January 16, 2005 to serve request for admissions. Veterans must have the opportunity to serve discovery on Jovie Jenkins and Rufus Jenkins, Jr., which necessarily require an extension of all the deadlines under the Joint Discovery Plan, to avoid prejudice Veterans.

## CONCLUSION

For the foregoing reasons, Veterans respectfully requests that the Court deny Plaintiffs' motion in whole or in part.

**Veterans Life Insurance Company, Inc.**
By its attorney,

/s/ Robert P. LaHait
Robert P. La Hait, BBO #551000
Fitzhugh, Parker & Alvaro LLP
155 Federal Street
Boston, MA  02110
(617) 695-2330
Date: January 6, 2006, 2005
rlahait@fitzhughlaw.com

## CERTIFICATE OF SERVICE

**I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 6, 2006.**

/s/ Robert P. La Hait
Robert P. La Hait

# Exhibit A

**FITZHUGH, PARKER & ALVARO LLP**
**ATTORNEYS AT LAW**

155 FEDERAL STREET
SUITE 1700
BOSTON, MA 02110-1727
TELEPHONE: (617) 695-2330
FAX: (617) 695-2335
WWW.FITZHUGHLAW.COM

MICHAEL A. FITZHUGH
WILLIAM L. PARKER
FERDINAND ALVARO, JR. •
MARK A. NEWCITY ∆

CAROL J. ANGUILLA ♦≠
FRANK CAMPBELL JR. *
JOSEPH M. CODEGA ०*
FREDERICK E. DASHIELL *
LUCY ELANDJIAN *

ANNE-MARIE H. GERBER ⊣
KATHLEEN GROVER ▽
BARBARA L. HORAN
ROBERT P. LA HAIT
AMY CASHORE MARIANI *
JEFFREY B. L. MELLER ⱡ§
SUSAN M. MORRISON
JEFFREY A. NOVINS •
EDWARD P. O'LEARY †
SONIA L. SKINNER ♦
DAVID JON VOLKIN
KENNETH F. WHITTAKER

RHODE ISLAND OFFICE

571 PONTIAC AVENUE
CRANSTON, RI 02910
TELEPHONE (401) 941-3220
FAX (401) 941-3055

CONNECTICUT OFFICE

100 CONSTITUTION PLAZA
SUITE 600
HARTFORD, CT 06103
TELEPHONE: (860) 549-6803
FAX: (860) 728-0546

* OF COUNSEL
ⱡ INTERNATIONAL COUNSEL

UNLESS DESIGNATED OTHERWISE, OUR ATTORNEYS ARE ADMITTED ONLY IN MASSACHUSETTS

| | | |
|---|---|---|
| ♦ | ALSO ADMITTED IN CALIFORNIA | ० | ONLY ADMITTED IN RHODE ISLAND |
| ∆ | ALSO ADMITTED IN CONNECTICUT | ≠ | ALSO ADMITTED IN WASHINGTON, D.C. |
| ▽ | ONLY ADMITTED IN CONNECTICUT | ♦ | ONLY ADMITTED IN MARYLAND |
| • | ALSO ADMITTED IN NEW YORK | ⱡ | ALSO ADMITTED IN MARYLAND |
| † | ALSO ADMITTED IN NEW HAMPSHIRE | § | ONLY ADMITTED IN VERMONT |

December 19, 2005

Burton A. Nadler
Perucelly & Nadler, P.C.
One State Street, Suite 900
Boston, MA 02109

Re:    Michelle Jenkins and Mattie Gadson v. Veterans' Life Insurance Company, Inc.
       United States District Court for the District of MA Docket No. 05-CV-11139 NG

Dear Attorney Nadler:

This letter will memorialize the conversation we had on Friday, December 16, 2005, in which I sought extend to your client, Mattie Gadson, Veterans' Life Insurance Company, Inc.'s offer to pay her claim in full for accidental death benefits under Group Accidental Death Insurance Certificate Number QI39513. My intention was to simply determine to whom the draft for the accidental death benefits, totaling $30,000.00, should be paid and if necessary, your firm's Tax I.D. number. You replied that you would not accept Veterans' offer.

Please be advised that I am informed that Veterans remains desirous of issuing a draft for the death benefits to Mattie Gadson upon receiving the relevant information from you.

If you have any questions or concerns regarding this issue, please do not hesitate to contact me.

Sincerely,

Melissa Wangenheim
Paralegal

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 DEC 16  P 4:19

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| VETERANS LIFE INSURANCE COMPANY, INC, <br> Plaintiff, <br><br> v. <br><br> MICHELLE JENKINS, JOVIE JENKINS AND RUFUS JENKINS, JR. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

05 CA 25-3 NG

Civil Action No.

## VETERANS LIFE INSURANCE
## COMPANY, INC.'S INTERPLEADER COMPLAINT

Pursuant to Rules 3 and 22 of the Federal Rules of Civil Procedure, Veterans Life Insurance Company, Inc. hereby files the following Interpleader Complaint against Michelle Jenkins, Jovie Jenkins and Rufus Jenkins, Jr. (collectively "the Defendants").

### PARTIES

1.    Plaintiff Veterans Life Insurance Company, Inc. ("Veterans") is an insurance corporation organized under the laws of the State of Illinois, with a principal place of business in Baltimore, Maryland. Veterans is duly authorized to conduct business in the Commonwealth of Massachusetts.

2.    Defendant Michelle Jenkins is an adult individual who, upon information and belief, resides at 176 Westville Street, in Dorchester, Massachusetts. Upon information and belief, Michelle Jenkins is the daughter of Veterans' deceased insured, Rufus Jenkins.

3.      Defendant Jovie Jenkins is an adult individual who, upon information and belief, resides at 609 Park Street, Dorchester, Massachusetts.  Upon information and belief, Jovie Jenkins is the daughter of Veterans' deceased insured, Rufus Jenkins.

4.      Defendant Rufus Jenkins, Jr. is an adult individual who, upon information and belief, resides at 609 Park Street, Dorchester, Massachusetts.  Upon information and belief, Rufus Jenkins, Jr. is the son of Veterans' deceased insured, Rufus Jenkins.

## JURISDICTION

5.      This is an action for rule interpleader under Fed.R.Civ.P. 22, and for statutory interpleader under the Federal Interpleader Act, 28 U.S.C. § 1335.  Jurisdiction exists under the Federal Interpleader Act because the insurance proceeds in dispute exceed the sum of $500, and there is diversity between Veterans and the Defendants.

6.      Diversity jurisdiction exists under 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

7.      Venue in this Court is proper pursuant to 29 U.S.C. § 1132(e)(2).

## FACTS

8.      Veterans' deceased insured, Rufus Jenkins, ("Decedent") purchased a Group Accidental Death Insurance Certificate ("Certificate"), having Certificate Number QH02529 and an effective date of coverage of October 9, 2001, under Group Policy Number MP02551 ("Policy") from Veterans. A true and accurate copy of the Certificate is attached hereto as Exhibit "A." The Decedent was insured under the Policy for $150,000.00 in group accidental death coverage. For ease of reference, the Policy's death benefit of $150,000.00 is referred to throughout as the "Proceeds."

2

9.    On December 25, 2004, the Decedent died of stab wounds to his chest and abdomen in Boston, Massachusetts. A true and accurate copy of the January 7, 2005 Certificate of Death relating to the Decedent that was issued by the City of Boston, Massachusetts, Registry Division, is attached hereto as Exhibit "B".

10.   At the time the Decedent enrolled for the coverage under the Policy with Veterans he designated the Defendants as the beneficiaries of the Proceeds under the Policy. A true and accurate copy of the Enrollment Form is attached hereto as Exhibit "C." The Decedent's original designation was on file with Veterans when Veterans was notified of the Decedent's death.

11.   On January 3, 2005, defendant Michelle Jenkins notified Veterans of the Decedent's death and submitted a claim for the Proceeds under the Policy as well as the death benefits under a second Group Accidental Death Insurance Certificate ("Second Certificate") purchased by the Decedent from Veterans. The Second Certificate, having Certificate Number QI39513 and an effective date of coverage of April 5, 2002, under Group Policy Number MP02521, has a death benefit of $30,000.00. A true and accurate copy of the defendant Michelle Jenkins' claim for the Proceeds is attached hereto as Exhibit "D."

12.   The defendant Michelle Jenkins was not a designated beneficiary under the Second Certificate. Mattie Gadson, the Decedent's mother, is the sole beneficiary designated under the Second Certificate.

13.   By letter dated January 21, 2005, Veterans through its representative, Linda Newirk, requested a copy of the Coroner's Medical Reports, Autopsy Reports and Blood Alcohol And Toxicology Reports for the Decedent from the Medical Examiner's Office. A true and accurate copy of said letter is annexed hereto as Exhibit "E."

- 3 -

14. By letter dated January 21, 2005, Veterans through its representative, Linda Newirk, requested a complete copy of the Police Report in connection with the Decedent's stabbing from the Boston Police Department. A true and accurate copy of said letter is annexed hereto as Exhibit "F."

15. By letter dated January 21, 2005, Veterans through its representative, Linda Newirk, updated the defendant Michelle Jenkins on the progress of Veterans investigation of her claim for the Proceeds of the Policy. A true and accurate copy of said letter is annexed hereto as Exhibit "G."

16. By letter dated January, 26, 2005, Veterans through its representative, Linda Newirk, informed the defendant Michelle Jenkins that the defendants Jovie Jenkins and Rufus Jenkins, Jr. were also beneficiaries under the Policy and requested that defendant Michelle Jenkins provide information through which Veterans could contact the defendants Jovie Jenkins and Rufus Jenkins, Jr. A true and accurate copy of said letter is annexed hereto as Exhibit "H."

17. The defendant Michelle Jenkins, through an e-mail dated February 1, 2005, provided the contact information for the defendants Jovie Jenkins and Rufus Jenkins, Jr.

18. By letters dated February 1, 2005, Veterans through its representative, Linda Newirk, updated the defendants Jovie Jenkins and Rufus Jenkins, Jr. on the progress of Veterans' investigation of the claim for the Proceeds of the Policy. A true and accurate copy of said letters are annexed hereto as Exhibits "I."

19. By e-mail dated February 8, 2005, Veterans through its representative, Linda Newirk, responded to an e-mail inquiry by the defendant Michelle Jenkins dated February 8, 2005 for an update on the status of her claim under the Policy, advising the defendant Michelle Jenkins that

- 4 -

Veterans, inter alia, was currently awaiting receipt of the Autopsy Report. True and accurate copies of said e-mails are annexed hereto as Exhibit "J."

20.   By e-mail dated February 14, 2005, Veterans through its representative, Linda Newirk, responded to an e-mail inquiry by the defendant Michelle Jenkins dated February 14, 2005 on whether Veterans had received the autopsy report, advising her that the autopsy report requested by Veterans on January 21, 2005 had not yet been received. True and accurate copies of said e-mails are annexed hereto as Exhibit "K."

21.   Per the request by the defendant Michelle Jenkins, by letter dated February 14, 2005, Veterans through its representative, Linda Newirk, requested the Decedents' Autopsy, Blood Alcohol and Toxicology Reports from the Suffolk County District Attorney's Office. A true and accurate copy of said letter annexed hereto as Exhibit "L."

22.   By e-mail dated February 18, 2005 Veterans through its representative, Linda Newirk, responded to an e-mail inquiry by the defendant Michelle Jenkins dated February 18, 2005 regarding, inter alia, the steps remaining in Veterans' investigation. True and accurate copies of said e-mails are annexed hereto as Exhibit "M."

23.   By letter dated February 24, 2005, the Suffolk County District Attorney's Office, through Deputy Legal Counsel Joseph M. Ditkoff, advised Veterans that it would allow the Chief Medical Examiner's Office to release the autopsy report of the Decedent to Veterans. A true and accurate copy of said letter is annexed hereto as Exhibit "N."

24.   By letters dated February 24, 2005, Veterans through its representative, Linda Newirk, advised the Defendants regarding the status of its investigation of the claim for the Proceeds under the Policy. True and accurate copies of said letters are annexed hereto as Exhibit "O".

25.    Rather than wait a reasonable period of time for the Medical Examiner's Office to mail the Decedent's complete autopsy report, toxicology report and other attendant documentation to Veterans as requested by Veterans on January 21, 2005 and February 14, 2005, the defendant Michelle Jenkins took it upon herself to obtain said documentation from the Medical Examiner's Office and send it to Veterans, via facsimile and regular mail. Unfortunately, the documentation forwarded, via facsimile and regular mail, by the defendant Michelle Jenkins was incomplete in that it did not include the Toxicology Report and/or it was illegible, and Veterans so informed the defendant Michelle Jenkins by e-mail.

26.    By e-mail dated March 4, 2005, the defendant Michelle Jenkins asserted that Linda Newirk of Veterans had never before requested a copy of the toxicology report and she, therefore, demanded, that Linda Newirk direct her to someone at Veterans in higher authority.

27.    By e-mail dated March 7, 2005, Veterans, through its representative, Linda Newirk, advised the defendant Michelle Jenkins that, contrary to her assertion, Veterans had always requested a copy of the toxicology report from the Medical Examiner's office. A true and accurate copy of this e-mail is annexed hereto as Exhibit "P."

28.    By letters dated March 8, 2005, Veterans through its representative, Linda Newirk, advised the Defendants of the status of Veterans' investigation, stating, inter alia, that the toxicology report indicated that the Decedent tested positive for Cocaine, that the Decedent was found deceased in the Verizon parking lot at 3:19 a.m. on December 25, 2005, that Veterans investigation was ongoing to determine whether the Decedent's death was caused by or resulting from conditions or situations excluded from coverage and that Veterans would keep the

Defendants posted on the progress of the investigation. A true and accurate copy of this letter is annexed hereto as Exhibit "Q."

29.    On March 21, 2005, the defendant Michelle Jenkins, through her Attorney, Burton A. Nadler, demanded that Veterans immediately pay the defendant Michelle Jenkins the Proceeds under the Policy. A true and accurate copy of said letter is annexed hereto and marked Exhibit "R."

30.    As of March 21, 2005, Veterans was still engaged in its reasonable investigation of the claim for the Proceeds under the Policy, which included attempts to elicit information from the Homicide Division of the Boston Police Department regarding the circumstances of the Decedent's death. As of that time, the investigation by the Boston Police Department was ongoing, and, to preserve the integrity of its investigation, the Boston Police Department indicated that it would not share at that time information that would assist Veterans in determining whether the Decedent's death was an "accidental death, pursuant to the terms, conditions and exclusions of the Policy, warranting payment of the Proceeds under the Policy.

31.    On May 11, 2005, the defendant Michelle Jenkins filed a Complaint, having Civil Action Number 05-1880-H in the Suffolk Superior Court in Boston, Massachusetts that was captioned, *Michelle Jenkins and Mattie Gadson v. Veterans' Life Insurance Company, Inc.* ("Complaint"). In the Complaint it is alleged, inter alia, that Veterans' failure to pay the full amount of the Proceeds to defendant Michelle Jenkins, as demanded in a letter through her Attorney, Burton Nadler, dated March 21, 2005, constituted a breach of contract and violation of M.G.L. c. 93A and c. 176D. A true and accurate copy of the Complaint is annexed hereto and marked Exhibit "S."

- 7 -

32.    On June 1, 2005, Veterans removed the Complaint in the Suffolk Superior Court to the United States District Court For The District Of Massachusetts, pursuant to 28 U.S.C. § 1441(b). The defendant Michelle Jenkins subsequently filed an Amended Complaint, adding the claim that Veterans' failure to pay the Proceeds to her constituted a violation of 42 U.S.C.A § 1981. The Amended Complaint is now pending in the Federal Court bearing Civil Action Number 05-11139-NG ("Amended Complaint"). A true and accurate copy of the Amended Complaint is annexed hereto and marked Exhibit "T."

33.    Veterans has now concluded its investigation of the claim submitted by defendant Michelle Jenkins. Its investigation, which included, inter alia, the retention of a private investigator, has resulted in the determination that the Decedent's homicide was an accidental death pursuant to the terms and conditions of the Certificate and that Veterans is thus obligated to pay the Proceeds to the rightful beneficiaries under the Certificate. Accordingly, as of this date, Veterans sought to pay Mattie Gadson the accidental death benefits under the Second Certificate by contacting the office her attorney, Burton Nadler, and requesting that his office inform Veterans to whom Mattie Gadson and/or her attorney would like Veterans to make the draft for the accidental death benefits payable and if her counsel, Burton Nadler, is to be a payee on said draft, the federal tax identification number for Attorney Nadler.

34.    Contrary to the allegations in the Amended Complaint, the defendant Michelle Jenkins is not entitled to the full amount of the Proceeds payable under the Policy. Defendants Jovie Jenkins and Rufus Jenkins, Jr., who are not parties to the Amended Complaint, are entitled to share the Proceeds equally with the defendant Michelle Jenkins.

35.    Veterans initiated this interpleader action to ensure that the Defendants as beneficiaries under the Policy receive their rightful share of the Proceeds.

36.    Insofar as the defendant Michelle Jenkins has alleged in a letter, through her Attorney Burton Nadler, marked Exhibit "R" and the Amended Complaint marked Exhibit "T" that she is entitled to the entire Proceeds payable under the Policy, her claim is in conflict and adverse to the rights of defendants Rufus Jenkins, Jr. and Jovie Jenkins in the Proceeds. In light of the conflicting or potentially conflicting claims of the Defendants, Veterans is or may be subject to multiple        liability        with        respect        to        the        Proceeds.

37.    Veterans is merely a disinterested stakeholder in this action inasmuch as it claims no interest in Proceeds, and admits that the Proceeds are due and owing to someone.  Veterans hereby offers to and is ready to deposit the Proceeds with the Court upon the entry of an appropriate Order.

## COUNT ONE

38.    Veterans incorporates the allegations set forth in paragraphs 1 - 37 of its Interpleader Complaint by reference as if set forth fully herein.

39.    Under the Policy, the accidental death benefit at issue is $150,000.00. Veterans will deposit a check in the amount of $150,000.00, plus any applicable interest, after the entry of an appropriate Order.

40.    Veterans admits that it must pay the Proceeds, but Veterans avers that it must pay the Proceeds only one time.

41.    Unless Veterans is allowed to interplead the Defendants, it is at risk for double, multiple, or inconsistent judgments.

42.     Pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(a)(3)(B), 29 U.S.C. § 1144(a), and Fed.R.Civ.P. 22 this Court is empowered to enjoin any claimant from filing a separate lawsuit relating to the accidental death insurance distribution, and to discharge Veterans from any further liability relating to the Proceeds and/or the Policy.

43.     Pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(a)(3)(B), and Fed.R.Civ.P. 22 to award a disinterested stakeholder such as Veterans the reasonable costs and attorneys' fees associated with initiating an interpleader action.

44.     Veterans is entitled to have this Court adjudicate the competing claims, or potentially competing claims of the Defendants and to establish Veterans' legal obligations to the Defendants with finality.

WHEREFORE, Veterans Life Insurance Company respectfully requests that the Court issue an Order:

(a)     Allowing Veterans to deposit the Proceeds into the Court's registry;

(b)     Compelling the Defendants to determine through interpleader their competing, or potentially competing and adverse claims for the Proceeds;

(c)     Extinguishing with finality all claims that the Defendants have against Veterans upon Veterans' payment of the Proceeds into Court;

(d)     Restraining the Defendants from instituting or prosecuting, in any other state or federal court, any proceeding against Veterans with respect to the Proceeds;

(e)     That upon Veterans' deposit of the Proceeds with the Court, Veterans will be discharged from any liability in this action;

(f)     Awarding Veterans its reasonable attorneys' fees and costs associated with filing this interpleader action; and

(g)    Granting Veterans such other and further relief as the Court deems just and proper.

Veterans Life Insurance Company,
By its attorney,

Robert P. La Hait, BBO #551000
Fitzhugh, Parker & Alvaro LLP
155 Federal Street
Boston, MA  02110
(617) 695-2330

Date: December 16, 2005

- 11 -

# Exhibit C

# PETRUCELLY & NADLER, P.C.

## ATTORNEYS AT LAW

JEFFREY PETRUCELLY
BURTON A. NADLER
JENNIFER M. NORRIS
ELIZA J. MINSCH

*Paralegal*
SUSAN K. JACOBY

March 21, 2005

CERTIFIED MAIL,
RETURN RECEIPT REQUESTED

Linda Newkirk, ALHC, HIA
Senior Claim Representative
19493-333 Attention Claims Service Division
Veterans Life Insurance Company
Valley Forge, PA  19493

Re:    Rufus Jenkins
Policy Nos. QH02529 & Q139513

Dear Ms. Newkirk:

This letter is being sent to you pursuant to the Massachusetts Consumer Protection Act, M.G.L. c.93A, for certain unfair and deceptive business practices that you have committed against my clients, Michelle Jenkins and Mattie Gadson, concerning the above noted life insurance polices of the now deceased Rufus Jenkins.

As you know, Ms. Jenkins filed claims with Veterans Life Insurance Company under the above noted policies for herself and her grandmother, Mattie Gadson. The aforementioned policies were up to date and paid in full, such that the beneficiaries are now entitled to receive the death benefits under those policies.

Rather than pay the benefits to my clients, as they are entitled under the terms of the policies, you have taken the route of sending my clients meaningless and frivolous letters and emails alleging that you need to obtain "more information" concerning the deceased.

You have already received the autopsy report from the Chief Medical Examiner of the Commonwealth of Massachusetts as well as the death certificate, each of which state that the cause of death of Rufus Jenkins was "stab wounds to chest and abdomen".

March 21, 2005
Page 2

For you to now write to my client on March 8, 2005 that you need further information, including all of the deceased's medical records for a period of time of one year prior to his death in order to "rule out a death as being caused by or resulting from any of the conditions or situations excluded from coverage, ..." is patently absurd. The exclusions part of the policy in no way include anything which you would possibly find from those medical records as there is absolutely no doubt as the cause of death in this case.

Mr. Jenkins did not die from any of the "excluded" parts of his polices, as you well know.

Thus, your request for medical records, after already receiving more than you needed to receive from the Chief Medical Examiner, the Boston Police Department and from my clients, is nothing more than harassment of my clients and an unfair deceptive business practice as defined by M.G.L. c.93A.

Therefore, demand is hereby made that you immediately pay the death benefit of $150,000.00 under policy no. QH02529 and $30,000.00 under policy no. Q139513. You can forward the checks to the undersigned's attention.

If you do not reply to this demand letter within 30 days of receipt of this letter, the law in Massachusetts presumes that the above noted actions that you have taken have been intentional. Then, if suit is filed in this matter in the Superior Court under M.G.L. c.93A, you and your company could be liable to my client for triple the actual damages that they have suffered, plus all of their costs and a reasonable attorney's fee.

Your expeditious response to this letter is anticipated along with full payment as noted above.

Very truly yours,

Burton A. Nadler

BAN/mg
cc:    Michelle Jenkins
       Mattie Gadson



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Linda Newkirk, ALHC, HIA
Senior Claim Representative
19493-333 Attn. Claims Service
Veterans Life Insurance Company
Valley Forge, PA 19493

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature

X _____    ☐ Agent
                                ☐ Addressee

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)

7004 2510 0004 0768 8413

PS Form 3811, July 1999        Domestic Return Receipt        102595-00-M-0952

---

7004 2510 0004 0768 8413

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, ...

# Exhibit D

# PETRUCELLY & NADLER, P.C.

### ATTORNEYS AT LAW

*Paralegal*
SUSAN K. JACOBY

JEFFREY PETRUCELLY
BURTON A. NADLER
JENNIFER M. NORRIS
ELIZA J. MINSCH

April 12, 2005

CERTIFIED MAIL/RRR

Margaret R. Moser
Senior Claim Examiner
Claims Service Division
Veterans Life Insurance Co.
Valley Forge, PA  19493

> Re:  Rufus Jenkins
> Policy Nos:  QH02529 and QI39513

Dear Ms. Moser:

This will acknowledge receipt of your April 7, 2005 letter which purported to reply to my March 21, 2005 correspondence concerning the above noted polices.

I appreciate very much your quoting for me the exclusions part of the life insurance contracts, but as you are well aware, Mr. Jenkins' death was <u>not</u> caused by nor did it result from the influence of any drug, or the committing or attempting to commit any illegal activity.  He was stabbed to death in a parking lot.

As such, your response, which failed to make any offer of the policy amounts that are due, is considered under Massachusetts law to be a further unfair and deceptive business practice which could subject your company up to treble damages.

In order to avoid that fate, the instructions that I have from my client are clear:  unless the full death benefits of both policies are in my possession made payable to my client on or before <u>April 22, 2005</u>, it is my intent to file suit against Veterans Life Insurance Company in the Superior Court of Massachusetts seeking not only said death benefit amounts, but also treble said amount, plus all of my client's costs and attorney's fees.

Nothing in your letter provides any information that contradicts the cause of Mr. Jenkins death.  As such, payment should be made forthwith.

Your expeditious response is anticipated.

Very truly yours,

Burton A. Nadler

BAN/dv
cc: Michelle Jenkins

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Margaret Moser
Sr. Claims Examiner
Veterans Life Ins. Co.
Valley Forge, PA 19493

Re: Rufus Jenkins

2. Article Number (Copy from service label)

7003 2260 0002 8493 3933

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    B. Date of Delivery

C. Signature

X  Joseph O. Duffy

□ Agent
□ Addressee

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   □ Certified Mail   □ Express Mail
   □ Registered       □ Return Receipt for Merchandise
   □ Insured Mail     □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

SOUTHEAST
PA 19399
USPS

---

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7003 2260 0002 8493 3933

Sent To  Margaret Moser
Street, Apt. No.; or PO Box No.  Veteran Life Ins. Co.
City, State, ZIP+4  Valley Forge, PA 19493

PS Form 3800, June 2002    See Reverse for Instructions

# Exhibit E

# VETERANS LIFE INSURANCE COMPANY

**A Private Enterprise, not affiliated with the VA or any government agency**
**VALLEY FORGE, PENNSYLVANIA 19493**

## GROUP ACCIDENTAL DEATH INSURANCE CERTIFICATE

This insurance Certificate pays benefits for death due to an accident. In this Certificate, Veterans Life Insurance Company is referred to as "we," "our," or "us." The Principal Insured is "you," "your," or "yours." This Certificate explains your coverage under the Group Policy. The Group Policy is a legal contract. You rely on us to honor its terms. We depend on your payment of premiums when due.

The Group Policy Number and the name of the Policyholder are shown in the Certificate Schedule. The Policy may be inspected during business hours at the office of the Policyholder.

### CERTIFICATE SCHEDULE

| | |
|---|---|
| INSUREDS: | PLAN SPECIFICATIONS:  D%X 20 P22R 0361 |
| CERTIFICATEHOLDER: **RUFUS E JENKINS** | • **ACCIDENTAL DEATH BENEFIT: $150,000**<br>• **COMMON CARRIER ACCIDENTAL DEATH: $500,000** |

CERTIFICATE EFFECTIVE DATE: **October 9, 2001**
CERTIFICATE NUMBER: **QH02529**

| RENEWAL PREMIUM: | **N/A** | INITIAL PREMIUM: **$48.60** | | INITIAL TERM: **3 Months** |
|---|---|---|---|---|
| | | $48.60 | $94.72 | $179.47 |
| | MONTHLY | QUARTERLY | SEMI–ANNUALLY | ANNUALLY |

GROUP POLICYHOLDER:  **VETERANS BENEFITS GROUP INSURANCE TRUST**
GROUP POLICY NUMBER: **MP02551**

### TABLE OF CONTENTS

| | Page | | Page |
|---|---|---|---|
| Certificate Schedule | 1 | Definitions | 2 |
| Right to Examine Certificate for 60 Days | 1 | Exclusions | 3 |
| Individuals Eligible for Insurance | 2 | Beneficiary | 3 |
| When Coverage Starts | 2 | When There is a Claim | 3 |
| When Coverage Stops | 2 | General Provisions | 4 |
| Accidental Death Benefit | 2 | Premiums | 4 |

**GUARANTEED RENEWABLE:** We guarantee to renew this Certificate until you reach Age 75, subject to the timely payment of premiums when due.

**RIGHT TO EXAMINE CERTIFICATE FOR 60 DAYS:** If for any reason you are not satisfied with your Certificate, you may return it to us within 60 days of: (a) the date you receive the Certificate; or if later, (b) the date the first premium is paid. We will refund any premiums paid. The Certificate is treated as if it never existed. No benefits are paid.

**IN WITNESS,** this Certificate is signed by our President and Secretary.

Craig D. Vermie
Secretary

Brian A. Smith
President

**THIS COVERAGE IS LIMITED TO ACCIDENTS AND DOES NOT PAY FOR DEATH DUE TO SICKNESS COVERAGE STOPS AT AGE 75**

## PART I: WHEN COVERAGE STARTS AND STOPS

### A. INDIVIDUALS ELIGIBLE FOR INSURANCE

**ELIGIBLE MEMBERS:** All members of the Group Policyholder as set forth in the Group Policy are eligible to enroll for coverage.

**ELIGIBLE DEPENDENT SPOUSE:** Each Eligible Member may insure any Dependent Spouse on the later of: (1) the Effective Date of his certificate; or (2) the date he first acquires a Dependent Spouse (see ADDING A DEPENDENT SPOUSE.)

### B. WHEN COVERAGE STARTS

Before coverage becomes effective, you must: (1) enroll; and (2) pay the required premium. Coverage will then start at 12:01 A.M., Standard Time, at your home on the date shown on your Certificate Schedule. If no premium is required when you enroll, you have 21 days from the Effective Date of the Certificate to pay the first premium. If you fail to do so, your Certificate will be deemed void from the beginning. No benefits will be paid for any loss.

**NOTE:** For Credit Card Payment, our receipt of your credit card billing authorization is considered payment of the first premium. For Automatic Bank Account Payment, our receipt of your bank account deduction authorization will be considered payment of the first premium. These methods of payment are explained in the "Premiums" provision.

**ADDING A DEPENDENT SPOUSE:** In order to cover any eligible Dependent Spouse not insured on the Effective Date, you must: (1) make written request to us; and (2) pay any required additional premium. The Effective Date of coverage for such Dependent Spouse shall be the date shown on our endorsement indicating such addition.

### C. WHEN COVERAGE STOPS

Coverage under this Certificate stops on the earliest of:

1) the date you reach Age 75;
2) the date the 31 day Grace Period ends if you fail to pay the premium when due (NOTE: If payment is made by credit card or automated account deductions, you must notify us in writing to cancel this insurance. See the "Premiums" provision); or
3) the date we receive your written request to cancel. (**Note Concerning Cancellation:** The provision entitled "Right to Examine Certificate for 60 Days" explains the rules for cancellation when your coverage is first issued. After that 60 day period we reserve the right to delay your cancellation until your next monthly due date. You may specify a later monthly premium due date to cancel. Any premiums paid beyond the date the cancellation is effective are refunded. No benefits are paid for any loss which occurs after the date your coverage stops.)

A Covered Dependent Spouse's coverage stops on the premium due date after a change in marital status. If this happens, the Covered Dependent Spouse may apply for a Certificate with similar benefits. We do not require proof of good health. We must receive a written request within 60 days of the change in marital status. The spouse then pays the premium for a single adult at his age.

### D. PRINCIPAL INSURED'S DEATH:

In the event of your death, your Covered Dependent Spouse will automatically become the Principal Insured. His premium rate will be that of a Principal Insured based on his age at the time this Certificate was issued. However, if your Covered Dependent Spouse is age 75 or older on the date you die, such spouse will not become the Principal Insured. All coverage will stop.

## PART II: ACCIDENTAL DEATH BENEFIT

We pay a benefit if an Insured dies as the result of an Injury. The Accidental Death Benefit is shown on your Certificate Schedule. Death must occur within 90 days of the accident causing the Injury.

## PART III: DEFINITIONS

When used in this Certificate:

a) **"Age"** means, on the Effective Date, your current age based on your last birthday. Your age on the Effective Date will increase by one year on each Certificate Anniversary. Your age increase for purposes of this Certificate will always occur on the Certificate Anniversary, even if your actual birthday occurs (in most cases) during the Certificate Year prior to the Certificate Anniversary.

b) **"Certificate Anniversary"** means any anniversary of the date this Certificate takes effect.

c) **"Certificate Year"** means the 12 month period ending on any Certificate Anniversary.

d) **"Covered Dependent Spouse"** means your lawful spouse who is insured under this Certificate.

e) **"Injury"** means bodily injury caused by an accident, directly and independently of all other causes. It must occur while an Insured's coverage is in force. Benefits will not be paid for any loss caused by sickness or other bodily disease or infirmity.

f) **"Insured"** means the Principal Insured or any Covered Dependent Spouse who is insured under this Certificate.

g) **"Principal Insured"** means only the person who enrolled for coverage and who is named as the Certificateholder on the Certificate Schedule.

h) **"Written Notice"** means a request or notice in writing by an Insured to us.

## PART IV: EXCLUSIONS

The Certificate does not cover death caused by or resulting from any of the following:

(1)  intentionally self-inflicted injury, suicide or any attempt at suicide while sane or insane;
(2)  air travel as a pilot or crew member;
(3)  any active participation in a riot, armed conflict, insurrection or war, either declared or undeclared, occurring on or after the Effective Date;
(4)  a blood alcohol level of .10% (by weight or volume) or higher, or acting under the influence or effects of any alcohol;
(5)  being under the influence of any drug which was not administered in a therapeutic dosage as prescribed by a physician;
(6)  sickness, or bodily or mental infirmity;
(7)  participating in a race or speed contest involving motor vehicles of any type;
(8)  committing or attempting to commit any illegal activity; or
(9)  operating any motorcycle, motorbike, minibike, or moped.

## PART V: BENEFICIARY

1.  **Beneficiary:** You choose the person who receives the death benefit when an Insured dies. This person is called the Beneficiary. If there is no Beneficiary when the Insured dies, benefits are paid: (1) to his living spouse; or (2) if he does not have one, in equal shares to his living, lawful children; or (3) if there are none, in equal shares to his living, lawful parents; or (4) if there are none, in equal shares to his living, lawful brothers and sisters; or (5) if there are none, to his estate. Spouse means only the one to whom he is lawfully married on the date of his death. Except in the case of a legal adoption, lawful children, parents, brothers and sisters do not mean "step" children, parents, brothers or sisters. Any other benefits will be paid to you or to someone else that you request to receive benefits. Such request is subject to our prior approval.

2.  **Change of Beneficiary:** Unless you indicate that a Beneficiary cannot be changed, you can change the Beneficiary at any time. The beneficiary's consent is not needed. We will make the change only if we first acknowledge receipt of your notice. It will take effect on the date the notice was signed. The change is subject to: (1) the rights of any assignee; and (2) any payment made or action taken by us before our acknowledgement.

## PART VI: WHEN THERE IS A CLAIM

1.  **NOTICE OF CLAIM:** Written Notice of claim must be given to us within 30 days after an Insured's death or as soon as possible. Notice can be given to our Administrative Offices at Valley Forge, Pennsylvania 19493, or to one of our authorized agents. Notice should include the Insured's name and Certificate Number.

2.  **CLAIM FORMS:** When we receive a notice of claim we will send the claimant forms for filing proof of loss. If we do not do so within fifteen days, a written statement of the nature and extent of the loss should be submitted within the time fixed for Proof of Loss.

3.  **PROOFS OF LOSS:** Written proof of loss must be provided within 90 days after the date of loss. If it is not reasonably possible to furnish the necessary proof within the 90 days, a claim will not be reduced or denied because of failure to do so. In any event, except if not legally able to do so, proof of loss must be given no later than 1 year from the time the loss occurred.

4.  **TIME OF PAYMENT OF CLAIM:** We will pay benefits as soon as the claimant files written proof of loss.

5.  **CLAIMS PAYABLE:** All sums payable by us will be payable to the Beneficiary or Beneficiaries on file at our Office subject to: (1) our receipt of due proof of death; and (2) the rights of any assignee of record.

6.  **PHYSICAL EXAMINATION AND AUTOPSY:** When there is a claim, we reserve the right, at our expense, to examine the hospital charts and records of an Insured and to conduct an Autopsy, where not prohibited by law.

## **Veterans Life**
### INSURANCE COMPANY
*A private enterprise not affiliated with the VA or any governmental agency.*
Valley Forge, Pennsylvania 19493

# GROUP ACCIDENTAL DEATH INSURANCE CERTIFICATE

This insurance Certificate pays benefits for death due to an accident. In this Certificate, Veterans Life Insurance Company is referred to as "we," "our," or "us." The Principal Insured is "you," "your," or "yours." This Certificate explains your coverage under the Group Policy. The Group Policy is a legal contract. You rely on us to honor its terms. We depend on your payment of premiums when due.

The Group Policy Number and the name of the Policyholder are shown in the Certificate Schedule. The Policy may be inspected during business hours at the office of the Policyholder.

## CERTIFICATE SCHEDULE

INSUREDS:                                      PLAN SPECIFICATIONS:  FR? 20 P94A 1354

CERTIFICATEHOLDER: **RUFUS E JENKINS**            • **ACCIDENTAL DEATH BENEFIT: $30,000**

CERTIFICATE EFFECTIVE DATE: **April 5, 2002**
CERTIFICATE NUMBER: **QI39513**                INITIAL PREMIUM: **$2.85**                INITIAL TERM: **1 Month**
RENEWAL PREMIUM:    **$2.85**         **$8.34**              **$16.25**                 **$30.78**
                    MONTHLY      QUARTERLY       SEMI-ANNUALLY          ANNUALLY

GROUP POLICYHOLDER:   **AMERICAN VETERANS GROUP INSURANCE TRUST**
GROUP POLICY NUMBER: **MP02521**

## TABLE OF CONTENTS

| | Page | | Page |
|---|---|---|---|
| Certificate Schedule | 1 | Definitions | 2 |
| Right to Examine Certificate for 60 Days | 1 | Exclusions | 3 |
| Individuals Eligible for Insurance | 2 | Beneficiary | 3 |
| When Coverage Starts | 2 | When There is a Claim | 3 |
| When Coverage Stops | 2 | General Provisions | 4 |
| Conversion Privilege | 2 | Premiums | 4 |
| Accidental Death Benefit | 2 | | |

**GUARANTEED RENEWABLE:** We guarantee to renew this Certificate until you reach Age 80, subject to the timely payment of premiums when due.
**RIGHT TO EXAMINE CERTIFICATE FOR 60 DAYS:** If for any reason you are not satisfied with your Certificate, you may return it to us within 60 days of: (a) the date you receive the Certificate; or if later, (b) the date the first premium is paid. We will refund any premiums paid. The Certificate is treated as if it never existed. No benefits are paid.
**IN WITNESS,** this Certificate is signed by our President and Secretary.

Craig D. Vermie
Secretary

Brian A. Smith
President

### THIS COVERAGE IS LIMITED TO ACCIDENTS AND DOES NOT PAY FOR DEATH DUE TO SICKNESS
### COVERAGE STOPS AT AGE 80

## PART I: WHEN COVERAGE STARTS AND STOPS

### A. INDIVIDUALS ELIGIBLE FOR INSURANCE

**ELIGIBLE MEMBERS:** All members of the Group Policyholder as set forth in the Group Policy are eligible to enroll for coverage.

**ELIGIBLE DEPENDENT SPOUSE** Each Eligible Member may insure any Dependent Spouse on the later of: (1) the Effective Date of his certificate; or (2) the date he first acquires a Dependent Spouse (see ADDING A DEPENDENT SPOUSE)

### B. WHEN COVERAGE STARTS

Before coverage becomes effective, you must: (1) enroll; and (2) pay the required premium. Coverage will then start at 12:01 A.M., Standard Time, at your home on the date shown on your Certificate Schedule. If no premium is required when you enroll, you have 21 days from the Effective Date of the Certificate to pay the first premium. If you fail to do so, your Certificate will be deemed void from the beginning. No benefits will be paid for any loss.

**NOTE** For Credit Card Payment, our receipt of your credit card billing authorization is considered payment of the first premium. For Automatic Bank Account Payment, our receipt of your bank account deduction authorization will be considered payment of the first premium. These methods of payment are explained in the "Premiums" provision.

**ADDING A DEPENDENT SPOUSE** In order to cover any eligible Dependent Spouse not insured on the Effective Date, you must: (1) make written request to us; and (2) pay any required additional premium. The Effective Date of coverage for such Dependent Spouse shall be the date shown on our endorsement indicating such addition.

### C. WHEN COVERAGE STOPS

Coverage under this Certificate stops on the earliest of:

1) the date you reach Age 80;
2) the date the 31 day Grace Period ends if you fail to pay the premium when due (NOTE If payment is made by credit card or automated account deductions, you must notify us in writing to cancel this insurance. See the "Premiums" provision); or
3) the date we receive your written request to cancel. **(Note Concerning Cancellation:** The provision entitled "Right to Examine Certificate for 60 Days" explains the rules for cancellation when your coverage is first issued. After that 60 day period we reserve the right to delay your cancellation until your next monthly due date. You may specify a later monthly premium due date to cancel. Any premiums paid beyond the date the cancellation is effective are refunded. No benefits are paid for any loss which occurs after the date your coverage stops.)

A Covered Dependent Spouse's coverage stops on the premium due date after a change in marital status. If this happens, the Covered Dependent Spouse may apply for a Certificate with similar benefits. We do not require proof of good health. We must receive a written request within 60 days of the change in marital status. The spouse then pays the premium for a single adult at his age.

### D. PRINCIPAL INSURED'S DEATH:

In the event of your death, your Covered Dependent Spouse will automatically become the Principal Insured. However, if your Covered Dependent Spouse is age 80 or older on the date you die, such spouse will not become the Principal Insured. All coverage will stop.

## PART II: ACCIDENTAL DEATH BENEFIT

We pay a benefit if an Insured dies as the result of an Injury. The Accidental Death Benefit is shown on your Certificate Schedule. Death must occur within 90 days of the accident causing the Injury.

## PART III: DEFINITIONS

When used in this Certificate:

a) **"Age"** means, on the Effective Date, your current age based on your last birthday. Your age on the Effective Date will increase by one year on each Certificate Anniversary. Your age increase for purposes of this Certificate will always occur on the Certificate Anniversary, even if your actual birthday occurs (in most cases) during the Certificate Year prior to the Certificate Anniversary.

b) **"Certificate Anniversary"** means any anniversary of the date this Certificate takes effect.

c) **"Certificate Year"** means the 12 month period ending on any Certificate Anniversary.

d) **"Covered Dependent Spouse"** means your lawful spouse who is insured under this Certificate.

VLC-3020-1197                                                                                     Page 2

e) **"Injury"** means bodily injury caused by an accident, directly and independently of all other causes. It must occur while an Insured's coverage is in force. Benefits will not be paid for any loss caused by sickness or other bodily disease or infirmity.

f) **"Insured"** means the Principal Insured or any Covered Dependent Spouse who is insured under this Certificate.

g) **"Principal Insured"** means only the person who enrolled for coverage and who is named as the Certificateholder on the Certificate Schedule.

h) **"Written Notice"** means a request or notice in writing by an Insured to us.

## PART IV: EXCLUSIONS

The Certificate does not cover death caused by or resulting from any of the following:

(1) intentionally self-inflicted injury, suicide or any attempt at suicide while sane or insane;
(2) air travel as a pilot or crew member;
(3) any active participation in a riot, armed conflict, insurrection or war, either declared or undeclared, occurring on or after the Effective Date;
(4) a blood alcohol level of .10% (by weight or volume) or higher, or acting under the influence or effects of any alcohol;
(5) being under the influence of any drug which was not administered in a therapeutic dosage as prescribed by a physician;
(6) sickness, or bodily or mental infirmity;
(7) participating in a race or speed contest involving motor vehicles of any type;
(8) committing or attempting to commit any illegal activity; or
(9) injury sustained as a result of operating any motorcycle, motorbike, minibike, or moped.

## PART V: BENEFICIARY

1. **Beneficiary:** You choose the person who receives the death benefit when an Insured dies. This person is called the Beneficiary. If there is no Beneficiary when the Insured dies, benefits are paid: (1) to his living spouse; or (2) if he does not have one, in equal shares to his living, lawful children; or (3) if there are none, in equal shares to his living, lawful parents; or (4) if there are none, in equal shares to his living, lawful brothers and sisters; or (5) if there are none, to his estate. Spouse means only the one to whom he is lawfully married on the date of his death. Except in the case of a legal adoption, lawful children, parents, brothers and sisters do not mean "step" children, parents, brothers or sisters. Any other benefits will be paid to you or to someone else that you request to receive benefits. Such request is subject to our prior approval.

2. **Change of Beneficiary:** Unless you indicate that a Beneficiary cannot be changed, you can change the Beneficiary at any time. The beneficiary's consent is not needed. We will make the change only if we first acknowledge receipt of your notice. It will take effect on the date the notice was signed. The change is subject to: (1) the rights of any assignee; and (2) any payment made or action taken by us before our acknowledgement.

## PART VI: WHEN THERE IS A CLAIM

1. **NOTICE OF CLAIM:** Written Notice of claim must be given to us within 30 days after an Insured's death or as soon as possible. Notice can be given to our Administrative Offices at Valley Forge, Pennsylvania 19493, or to one of our authorized agents. Notice should include the Insured's name and Certificate Number.

2. **CLAIM FORMS:** When we receive a notice of claim we will send the claimant forms for filing proof of loss. If we do not do so within fifteen days, a written statement of the nature and extent of the loss should be submitted within the time fixed for Proof of Loss.

3. **PROOFS OF LOSS:** Written proof of loss must be provided within 90 days after the date of loss. If it is not reasonably possible to furnish the necessary proof within the 90 days, a claim will not be reduced or denied because of failure to do so. In any event, except if not legally able to do so, proof of loss must be given no later than 1 year from the time the loss occurred.

4. **TIME OF PAYMENT OF CLAIM:** We will pay benefits as soon as the claimant files written proof of loss.

5. **CLAIMS PAYABLE:** All sums payable by us will be payable to the Beneficiary or Beneficiaries on file at our Office subject to: (1) our receipt of due proof of death; and (2) the rights of any assignee of record.

6. **PHYSICAL EXAMINATION AND AUTOPSY:** When there is a claim, we reserve the right, at our expense, to examine the hospital charts and records of an Insured and to conduct an Autopsy, where not prohibited by law.

## PART VII: GENERAL PROVISIONS

1. **LEGAL ACTIONS:** You may not bring a lawsuit against us (e.g., if we do not pay a claim): (1) during the 60 days after we receive written notice or loss; or (2) after 3 years from the time written proof of loss is required.

2. **OTHER INSURANCE IN THIS COMPANY:** You may, at any one time, be covered by more than one policy or certificate issued by us which provides the same or similar coverage. This is subject to our right to limit the amount of coverage an Insured may have according to our underwriting rules in effect at the time this Certificate is issued.

3. **PRONOUNS:** Masculine pronouns shall include the feminine gender unless the context indicates otherwise.

4. **ENTIRE CONTRACT CHANGES:** The Policy, the Policyholder's Application, this Certificate, and any endorsements make up the entire legal contract between the parties. No change in this Certificate is effective until approved by one of our officers. Such approval must be noted on or attached to this Certificate. No agent may change this Certificate or waive any of its provisions.

5. **MISSTATEMENT OF AGE:** If an Insured's age is misstated, benefits are changed to what the premium buys at the correct age.

6. **CLERICAL ERROR:** Neither record keeping errors nor delays in making entries will keep this Certificate in force or continue insurance which was validly terminated. If we find any such error or delay, we will make a fair adjustment of premiums.

## PART VIII: PREMIUMS

1. **PREMIUMS:** Premiums must be paid by the due date or during the Grace Period. If we bill you directly, you can pay using any of the Renewal Premium intervals shown on the Schedule. Premiums can be paid in advance. All premiums are payable to Veterans Life Insurance Company (Valley Forge, Pennsylvania 19493).

   **CREDIT CARD PAYMENT:** If credit card payment is used, our receipt of your credit card billing authorization will be treated as receipt of payment. The credit card company assumes the duty to pay each premium when due. You will be billed by them through the credit card. Premiums will be paid for as long as you authorize payment and your credit card remains in effect. This is subject to the option of the credit card company not to make payment if your credit card account is over limit or past due.

   **CREDIT CARD PAYMENT CANCELLATION:** If you choose to cancel this insurance, you must notify us in writing. We will stop credit card billing. You must pay for any coverage prior to the date your written request for cancellation is received.

   **AUTOMATIC BANK ACCOUNT PAYMENT:** If bank account payment is used, our receipt of your authorization to deduct premiums from your bank account will be treated as receipt of payment. The bank will pay each premium when due. Premiums will be paid for as long as you authorize payment, provided there are enough funds in your bank account to pay the premium.

   **BANK ACCOUNT PAYMENT CANCELLATION:** If you choose to cancel this insurance, you must notify us in writing. We will stop bank account deductions. You must pay for any coverage prior to the date your written request for cancellation is received.

2. **RIGHT TO ADJUST PREMIUMS:** We may change our Table of Premium Rates, by class, on any date. Any change made to your premium will be made on a uniform basis to all insureds of the same class.

3. **GRACE PERIOD:** You have a Grace Period of 31 days after the due date to pay each renewal premium. The coverage stays in force if the premium is paid during this Grace Period. If the premium is not paid within this Grace Period, this insurance will stop. If an Insured dies during the Grace Period, any premium due will be deducted from the Death Benefit.

4. **UNPAID PREMIUM:** When a claim is paid, any premium due and unpaid may be deducted from the claim payment.

5. **REINSTATEMENT OF CERTIFICATES:** If your premium is not paid before the Grace Period ends, your Certificate will lapse. Later acceptance of premium (by us or by an agent authorized to accept payment) without requiring an application for reinstatement will reinstate the Certificate.

   We may require an application for reinstatement. If so, you will be given a conditional receipt for the premium. When the application is approved, the Certificate will be reinstated as of the approval date. Lacking such approval, the Certificate will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

   The reinstated Certificate will cover only loss due to an Injury sustained after the date of reinstatement. In all other respects our rights and your rights will remain the same, subject to any provisions noted on or attached to the reinstated Certificate.

# Exhibit F

**Veterans Life Insurance Company**
Valley Forge, PA 19493

April 21, 2005

Boston Police Department
Homicide Unit
Attn: Detective Benton
One Schroeder Plaza
Boston, MA 02120

Re:                    Rufus Jenkins
Policy/Certificate:    QH02529
                       QI35913

Dear Detective Benton:

This is a follow up to our previous communications with you regarding the claim for Accidental Death Benefits under the above contracts insuring Mr. Rufus Jenkins.

Please call or fax a response to the following questions:

1.    Is the investigation into this Homicide being actively pursued?

2.    If yes, what information can be released to our office that has not been previously provided?

3.    Is the case just open and not being pursued?  If not being pursued, will the Department be pursing?

4.    Is there any evidence in the investigation so far that would indicate that Mr. Rufus Jenkins' death was caused by or resulted from him committing or attempting to commit an illegal activity?  If yes, what details are available?

5.    Are there any suspects at this time?

6.    Mr. Jenkins' toxicology report was positive for Cocaine and its metabolite, Benzoylecgonine.  Is there any indication Mr. Jenkins' death was connected to the use, purchase and/or selling of this narcotic?  If yes, please explain.

This information is needed to complete our evaluation of the claim and we appreciate your assistance.  Should you have any questions, please call our toll free number, 1-800-523-5626, extension 5512 or extension 5476 (Peg Jensen).

Sincerely,

*Linda Newkirk*

Linda Newkirk, ALHC, HIA
Senior Claim Representative
lnewkirk@aegonusa.com